180 N.J. Super. 592 (1981)
436 A.2d 102
ALID, INC.; AMERICAN AIR COMPRESSOR CO.; EMIL R. CAPITA; DEBORAH HOLDING CO.; ECCO HIGH FREQUENCY ELECTRIC CORP.; FINE MART CORP.; MICHAEL & BENJAMIN GOLDFARB; WALTER HAASE; HARTZ MOUNTAIN DEVELOPMENT CORP.; HUDSON COUNTY NEWS CO.; K MART APPAREL; LEE INTERNATIONAL; LEWISOHN SALES CO.; BOHDAN W. LUCKY AND MARY LUCKY; MACK CONCORD BUILDING CO.; MOTEL ASSOCIATES OF NORTH BERGEN; 9201 BERGEN BOULEVARD CORP.; PARK VIEW APARTMENTS, INC.; R.A.M. HOLDING CORP.; RED STAR EXPRESS LINES OF AUBURN, INC.; JAMES & NANCY RELLA; SAMO HOLDING CORP.; N.L. SCHENKEL; STASAR REALTY CORP.; JACK STEINMAN; T.G.S. REALTY; TRUCK MAINTENANCE CORP.; WALL STREET ON THE HUDSON CORP.; MAYFAIR HOLDING CO.; AND HUDSON TOWERS, INC., PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF NORTH BERGEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1981.
Decided April 6, 1981.
*593 Before Judges BISCHOFF, MILMED and FRANCIS.
Joseph R. Mariniello argued the cause for appellant (Dennis J. Oury, Township Attorney, Township of North Bergen, attorney; Doreen M. Goldbronn and James A. Coviello on the brief).
Edward G. Rosenblum argued the cause for respondents (Rosenblum & Rosenblum, attorneys; Edward G. Rosenblum of counsel and on the brief).
The opinion of the court was delivered by MILMED, J.A.D.
This appeal brings up for review the jurisdiction of the Tax Court of New Jersey which was established by L. 1978, c. 33, N.J.S.A. 2A:3A-1 et seq.
The factual background of the matter may be briefly summarized. A revaluation of the assessed properties in the Township of North Bergen (township) became effective in the tax year 1974. The revaluation sparked numerous tax appeals, including those by plaintiffs, in that year and in succeeding tax years. As a result of judgments reducing assessments entered in many of those appeals in the Division of Tax Appeals, the Hudson County Board of Taxation and the Tax Court, the township ultimately expects to refund upwards of $6,000,000. Early in 1980 plaintiffs moved in the Tax Court for orders compelling the township to pay them refunds arising from the judgments reducing assessments on their properties, the aggregate sum being approximately $725,000. Plaintiffs subsequently withdrew their motions since there was no provision in the then *594 current (1979) township budget to allow for payment of the refunds. In lieu thereof, plaintiffs moved in the Tax Court: (1) to restrain the township and its governing body from adopting its preliminary or final 1980 budget pending further order of the Tax Court; and (2) to compel and direct the governing body to include in the 1980 budget specific line items permitting payment of the refunds.
After hearing, an order was entered in the Tax Court on February 8, 1980: (1) restraining the township governing body "from adopting the 1980 preliminary and/or final budget for the Township of North Bergen pending further order" of the court; (2) directing the governing body "to include as separate line items" in the budget "appropriations for the refunds and interest charges due upon each of the judgments" in the matter; (3) directing the township Commissioner of Revenue and Finance "to issue refund checks payable to the individual plaintiffs," with interest, and deliver the checks to plaintiffs' attorneys; and (4) directing that interest be paid "at the statutory rate commencing on the dates provided by statute with respect to refunds due upon judgments relating to the 1977, 1978 and 1979 tax years," and at the rate of 12% a year, commencing 30 days after the date of each judgment, with respect "to refunds due upon judgments relating to the tax years prior to 1977."
A little over a month later the township sought an order dissolving the restraints and permitting the governing body "to introduce and adopt a preliminary and final budget." The township attorney argued that: (1) even if a budget with the refund items included was adopted, the township would still not be able to comply with the court's order because the necessary funds would not become available until quarterly tax payments and municipal income from other sources came in; (2) the restraints should not have been issued since plaintiffs had made no showing of irreparable harm; (3) if the full amount of refunds due all taxpayers was to be included in the budget, the *595 governing body would then be violating the "CAP" law[1] since the resulting budget increase would be "more than 5%"; and (4) if the court's order "is allowed to stand," the governing body would be "placed in jeopardy" of violating either the court's directives or the applicable statutes. As a substitute for the restraints and directives contained in the Tax Court's order of February 8, counsel suggested that the township be permitted to proceed with the sale, pursuant to its recently adopted local bond ordinance, of $6,100,000 of its bonds, approval of the ordinance having been granted by the Local Finance Board.[2] An order, consented to by the parties, was signed on March 19, 1980 dissolving the restraint contained in the February 8 order; vacating the provisions of the February 8 order which directed the township to include in its preliminary and final budgets "appropriations for the refunds and interest due the plaintiffs"; directing the governing body to "proceed forthwith and with due diligence to complete the sale and issuance of the bonds ... and to obtain the proceeds thereof"; and directing that "[p]romptly upon receipt of the proceeds of said bond issue, the [township] and its duly authorized officials shall pay to the plaintiffs ... the amount of tax refunds due to each, together with such interest due thereon as hereinbefore provided for by this Court," the checks representing the refunds to be made payable to the attorneys for each respective plaintiff.
Some three months after entry of the March 19 "consent order" the Tax Court, on plaintiffs' application, directed the township, by its governing body, to show cause why the members thereof "should not be compelled to appear before [the] Court in order to determine the extent to which they are in compliance with the previous order of [the] Court dated March 19, 1980," and ordered that the township "show cause as to why *596 sanctions should not be imposed" if it is determined that the governing body "failed to comply with" that March 19 order. At a continued hearing of the motion on July 17, 1980 it was disclosed that the township was actually contemplating a bond issue package relating to three separate projects aggregating $18,000,000, the only component thereof which had up to that time been approved by the Local Finance Board being the $6,100,000 proposed issue to pay the tax refunds. After hearing argument the Tax Court judge concluded that authority for the Tax Court to grant relief in the case "is found in [N.J.S.A.] 2A:3A-4, specifically section 4 of the act creating [the] court ... [which] provides in substance that the tax court in all causes within it's [sic] jurisdiction may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined." He found that the governing body of the township had "not proceeded with the due diligence required by [the] court's order of March 19, 1980," and he set forth the relief to be granted plaintiffs which thereafter was, in essence, incorporated in an order dated July 23 and filed July 30, 1980, which provides:
... that the Defendant be and it hereby is required to pay interest on refunds of overpayments of taxes for the tax years involved in this proceeding prior to 1977 at the rate of 18% per annum calculated from a date commencing 30 days after the date of entry of judgment by the former Division of Tax Appeals, the Hudson County Board of Taxation or the Tax Court of New Jersey; ...
... that the Defendant be and it hereby is required to pay interest on refunds of overpayments of taxes in respect to the tax year 1977 at the statutory rate of 8% per annum from the date of payment of those taxes to a date 50 days after the date of entry of final judgment by the former Division of Tax Appeals, the Hudson County Board of Taxation or the Tax Court of New Jersey, after which interest will accumulate at the rate of 18% per annum until date of payment; ...
... that the Defendant be and it hereby is directed to pay interest upon refunds of overpayments of taxes in relation to the tax years 1978 and 1979 at the statutory rate of 5% per annum from the date of payment of those taxes to a date 60 days after the date of entry of final judgment by the former Division of Tax Appeals, the Hudson County Board of Taxation or the Tax Court of New Jersey, after which interest will accumulate at the rate of 18% per annum until date of payment; ...

*597 ... that if the Plaintiffs, or any of them, shall elect, pursuant to statute, to have refunds credited against taxes which are or will become due, such credit shall include interest as hereinabove calculated to the date on which the installment of such future taxes becomes delinquent; ...
... that the Defendant, Township of North Bergen, and the individual members of the Board of Commissioners be and hereby are directed to exercise due diligence and shall pursue all efforts to sell bonds to liquidate the tax refund obligations in issue, together with interest thereon, as hereinabove provided; ...
... that the proceeds of the bond sale earmarked for the liquidation of the tax refund obligations owed to these Plaintiffs shall be paid to the Clerk of the Tax Court and if said bonds are earmarked for tax refund obligations owed by the Defendant to taxpayers in addition to the Plaintiffs, then the proceeds shall nevertheless be paid to the Clerk of the Tax Court; ...
... that the Clerk of the Tax Court, upon receipt of such proceeds, shall apply so much thereof as is then necessary to pay in full the tax refund obligations and accumulated interest owed to the Plaintiffs with the balance thereof, if any, remitted to the Defendant. In the event the net proceeds of the bond issue are insufficient to pay the tax obligations plus interest owed to the Plaintiffs, then the Clerk of the Tax Court shall distribute such funds on a pro rata basis to each of the Plaintiffs involved in this proceeding. Each such refund check shall be made payable to the order of Rosenblum & Rosenblum, P.A., as attorneys for the respective individual Plaintiffs and shall be delivered to their office at One Harmon Plaza, Secaucus, New Jersey, 07094; ...
... that to the extent the aforementioned tax refunds and accumulated interest are not fully paid and satisfied by payments and/or credits, they shall be included in Defendant's 1981 budget as separate line items for each individual Plaintiff and the unpaid balance, including interest calculated as herein ordered, shall be paid in full not later than March 1, 1981; ...
... that a counsel fee be and hereby is awarded to Rosenblum & Rosenblum, P.A., counsel for Plaintiffs in the sum of $5,000, which payment shall be included as a separate line item in Defendant's 1981 budget and shall be paid on or before February 5, 1981; ...
... that a copy of this order certified as true be forthwith served upon each of the members of the Board of Commissions [sic] of the Defendant Township, Leonard DeMarsico, Tax Collector of the Defendant Township, LeBoeuf, Lamb, Leiby & MacRae, Bond Counsel, the successful bidders at the bond sale, and upon the Financing Board of the Division of Local Government of the State of New Jersey; ...
... that this Court retain jurisdiction and directs the Defendant to submit upon a monthly basis written reports to the Court on or before the 10th day of each month commencing September, 1980, which reports shall indicate the extent to which the Defendants have complied with this order. Copies of each of these reports shall be served upon Plaintiffs' counsel simultaneously with the filing with this Court; ...
... that for each day in which Defendant is delinquent in the filing of such report this Court, in it's [sic] discretion, may impose a fine of $100 per day; ...

*598 ... that a stay be and hereby is granted in respect to the terms of this order until August 1, 1980, on which day such stay shall automatically dissolve.
The township appealed from this July 23 order and we stayed its enforcement pending disposition of the appeal.
The township contends, in essence, that: the Tax Court had no authority to hear and determine plaintiffs' post-judgment motions; the Tax Court lacks jurisdiction to entertain a proceeding in lieu of the prerogative writ of mandamus "to compel the municipal officers to exercise their discretion in preparation of a municipal budget," or "to restrain the introduction and passage" of a municipal budget; the Tax Court "abused its discretion by requiring budgetary appropriations"; plaintiffs are not entitled to injunctive relief since "they have failed to show immediate and irreparable damage"; plaintiffs failed to join an indispensable party, viz., "the Director of the Division of Local Government"; the order under review "is in violation of N.J.S.A. 54:3-27.2"; and enforcement of the order is prohibited by the "separation of powers" provision of the State Constitution, N.J.Const. (1947) Art. III, par. 1.
The central issue before us is whether the Tax Court had jurisdiction to hear plaintiffs' post-judgment motions and grant the relief which it did in this case. We hold that it did not.
Following the filing of the township's notice of appeal, the Tax Court judge filed his "findings and conclusions" in the matter. In regard to the court's jurisdiction, he again pointed to subsection (a) of § 4 of the act which established the court, stating:
The broad basis for this Court's exercise of its powers in aid of post-judgment relief is N.J.S.A. 2A:3A-4 which provides, pertinently:
a. The tax court, in all causes within its jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined.
From this he concluded:
This provision must be read in the context of the manifest intention of the Legislature to invest the Tax Court with the same powers as the Trial Divisions of the Superior Court.
*599 We disagree. We find nothing in the text or legislative history of chapter 33 of the Laws of 1978 to warrant the conclusion drawn by the Tax Court judge.
The Statement attached to Senate Bill 115, the second official copy reprint of which became L. 1978, c. 33, on its approval by the Governor on June 13, 1978, reads:
It is the purpose of this bill to establish a tax court as an inferior court of limited jurisdiction. The court will consist of no less than six, nor more than twelve judges, separately exercising the powers of the court subject to rules of the Supreme Court, with the Chief Justice of the Supreme Court to appoint one of the judges as presiding judge.
Judges of the tax court are to be nominated and appointed by the Governor with advice and consent of the Senate for a term of 7 years and if reappointed to hold office during good behavior. Appointments are to be such that the court will be bipartisan in character. Specific qualifications are required for appointment. The judges of the tax court will receive the same annual salary as a judge of the Superior Court, and no judge is to practice law or engage in other gainful pursuit.
The tax court will have jurisdiction to hear and determine all tax appeals now heard and determined by the Division of Tax Appeals.
A Small Claims Division is specifically established within the tax court to have jurisdiction of tax refund claims or tax assessment appeals where the amount in controversy does not exceed $2,000.00. All hearings of the division are to be informal except that testimony shall be given under oath. A party may appear on his own behalf, or represented by or accompanied by an attorney, public accountant, or other person as the court may permit to be present and participate in the proceeding.
In all matters of judgment of the Tax Court, appeals may be taken to the Appellate Division of the Superior Court.
All employees of the Division of Tax Appeals are transferred to the office of the clerk of the tax court, and will retain their civil service status. Future appointments are to be by the clerk of the tax court in accordance with the Civil Service Law.
The current terms of the judges of the Division of Tax Appeals terminate within 6 months of the effective date of this act, and the Division of Tax Appeals will be abolished at that time.
The bill is effective July 1, 1979.
In the year before the enactment of the legislation a Senate Special Committee on Tax Appeals Procedure, in its report entitled "Tax Appeals in New Jersey: a Critique and a Program for Legislative Action," June 26, 1977, recommended:
That a tax court be established as an inferior court of limited jurisdiction in the Judicial branch of government, and that the tax court exercise the powers and *600 jurisdiction now exercised by the Division of Tax Appeals, and in addition thereto exercise the jurisdiction currently exercised by the Superior Court with regard to eminent domain[3] and transfer inheritance taxation.[4]
In regard to the jurisdiction of the proposed Tax Court the Committee stated:
The tax court, as an inferior court of limited jurisdiction authorized pursuant to Article VI, Section I, paragraph 1 of the New Jersey Constitution, should have jurisdiction over all tax appeals now taken to the Division of Tax Appeals. The tax court should also have the jurisdiction over matters related to eminent domain and to transfer inheritance taxation now exercised by the Superior Court. The tax court should have the power to hear and determine all issues of fact and law de novo. Appeals from the tax court, as now from the Division of Tax Appeals, should be to the Appellate Division of the Superior Court on issues of law only.
In like vein, the press release issued by the Governor's Office following the signing of Senate Bill 115 on June 13, 1978 significantly noted that the legislation "creates a tax court to replace the State Division of Tax Appeals." It is obvious that the primary intention of the 1977 Special Committee of the Senate and the primary intention of the Legislature in adopting Senate Bill 115 was to substitute a "tax court of full-time tenured judges" located in the Judicial Branch of government for the Division of Tax Appeals composed of part-time judges and located in the Executive Branch of government. Here we note that the Special Committee observed, "[i]t is extremely important to the efficacy of any adjudicatory process that it be separate from administrative and policy-making functions."
The Tax Court judge's heavy reliance upon N.J.S.A. 2A:3A-4 a, above quoted, as the basis for the court's authority to grant the relief detailed in the July 23, 1980 order, is misplaced. The pertinent language of N.J.S.A. 2A:3A-4 a was borrowed from *601 the former paragraph 5 of § IV of Art. VI of N.J. Constitution (1947), relating to the County Courts (since abolished) which read:
The County Courts, in civil causes including probate causes, within their jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined.[5]
As Chief Justice Vanderbilt explained in Donnelly v. Ritzendollar, 14 N.J. 96 (1953):
The purpose of this provision was to be make sure that "subject to law, cases properly brought in the County Courts will be completely determined by allowing equitable defenses and counterclaims," Report of the Committee on the Judiciary, reprinted in 2 Constitutional Convention of 1947, 1192 (1951). [at 103; emphasis supplied]
See also, In re Koehler, 43 N.J. Super. 585, 597 (App.Div. 1957).
To attempt to equate the jurisdiction of the Tax Court with that of the trial divisions of the Superior Court, as the Tax Court judge did in this case, simply ignores the clear language of both chapter 33 of the Laws of 1978 and pertinent provisions of the Judicial Article of our State Constitution. The Superior Court, which is divided into three, and only three, divisions, viz., "an Appellate Division, a Law Division, and a Chancery Division," N.J.Const. (1947), Art. VI, § III, par. 3, is a court of "original general jurisdiction throughout the State in all causes." N.J.Const. (1947), Art. VI, § III, par. 2. On the other hand, the Tax Court is, by the statute which created it, "an inferior court of limited jurisdiction." L. 1978, c. 33, § 1, N.J.S.A. 2A:3A-1. It can constitutionally exercise only that jurisdiction which the Legislature has seen fit to confer upon it. The jurisdiction conferred upon the court by L. 1978, c. 33, is limited to the hearing and determining of "all tax appeals of such character as [on July 1, 1979 were] taken to, and heard and determined by, the Division of Tax Appeals in the Department of the Treasury." N.J.S.A. 2A:3A-3. Thus, the Legislature, in providing that

*602 The tax court, in all causes within its jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined [,] [N.J.S.A. 2A:3A-4 a; emphasis supplied],
was obviously authorizing the court to "grant legal and equitable relief" only in those causes lying within its statutory jurisdiction. Cf. In re Koehler, supra. That jurisdiction extends only (1) to matters which, prior to July 1, 1979, could have been heard and determined by the Division of Tax Appeals, N.J.S.A. 2A:3A-3 and (2) to appeals with respect to transfer inheritance and estate taxes. L. 1978, c. 32, effective July 1, 1979, N.J.S.A. 54:33-2, N.J.S.A. 54:34-13, N.J.S.A. 54:38-10.
The scope of the Tax Court's limited jurisdiction was further made apparent by the enactment of L. 1979, c. 114, approved June 28, 1979. Section 12 a of that legislation, now N.J.S.A. 2A:3A-4.1 a, describes the type of matters which may be brought on for review by the Tax Court. Thus:
Any provision of law to the contrary notwithstanding:
a. Review of actions including any act, action, proceeding, ruling, decision, order or judgment of the county board of taxation or the Director of the Division of Taxation taken on or after the effective date of this act [i.e. July 1, 1979] shall be by filing a complaint in the Tax Court pursuant to the rules of court.
The February 13, 1979 Statement of the Senate Revenue, Finance and Appropriations Committee to Senate Bill 3009 with committee amendments, the third official copy reprint of which became L. 1979, c. 114, on its approval on June 28, 1979, reads, in part:
This bill proposes to establish legislative intent as to which provisions of Chapter 2 of Title 54 of the Revised Statutes establishing the structure, procedures and powers of the Division of Tax Appeals, will apply to the Tax Court established pursuant to P.L. 1978, Chapter 33 effective July 1, 1979.
The Tax Court is "... established as an inferior court of limited jurisdiction ... to be a court of record with jurisdiction to hear and determine all tax appeals of such character as now are taken to, and heard and determined by, the Division of Tax Appeals." (P.L. 1978, c. 33, ss. 1 and 3.) Any reference in law, rule, regulation, order, contract, document, judicial or administrative proceedings to the Division of Tax Appeals shall mean and refer to the Tax Court (P.L. 1978, c. 33, s. 28). Therefore, because the provisions of Chapter 2 of Title 54 of the Revised Statutes establish the structure, powers, procedures and jurisdiction *603 of the Division of Tax Appeals that chapter becomes a part of the body of law accomplishing such regarding the Tax Court. A legislative review of that body of law is necessary to establish clearly the intent of the Legislature as to the applicability of the Division of Tax Appeals statutes to the newly established tax court. This is accomplished by amending certain provisions to make them specifically applicable to the tax court and repealing those provisions which: (1) are similar to provisions contained in the act establishing the tax court; (2) are inappropriate to the tax court; or (3) should be established by court rule rather than by legislation, as reflected in the tax court legislation.
Plaintiffs' post-judgment motions which ultimately resulted in the entry of the order of July 23, 1979 under review did not call for review of any "act, action, proceeding, ruling, decision, order or judgment of the county board of taxation or the Director of the Division of Taxation." Rather, those motions essentially sought a review of the action (or inaction) of the governing body of appellant Township. That kind of proceeding, by which plaintiffs sought relief in the nature of mandamus, viz., to compel the governing body to exercise discretionary functions, was, in the first instance, cognizable only in the Law Division of the Superior Court. N.J.Const. (1947), Art. VI, § V, par. 4; R. 4:69-1. And see Pressler, Current N.J. Court Rules, Comments, R. 4:69 and R. 2:2-3(a)(2)(1981). See, also, Switz v. Middletown Tp., 23 N.J. 580, 589 (1957).
As Justice Heher observed in his opinion in Switz v. Middletown Tp.;
The generally accepted limitations upon the exercise of the ancient extraordinary remedy of mandamus obtain in New Jersey. It is a coercive process that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result. Mandamus lies to compel but not control the exercise of discretion ... Unless the particular duty be peremptory, the fair exercise of judgment and discretion is the province of the functioning authority. The right of the relator and the public duty sought to be enforced must be both clear and certain....
........
The essential nature of the extraordinary remedy of mandamus has not been altered by the 1947 Constitution. By Article VI, Section V, paragraph 4, prerogative writs "are superseded" and, "in lieu thereof, review, hearing and relief" shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, "as of right, except in criminal causes *604 where such review shall be discretionary." (Italics supplied) The writs themselves are superseded; but the substantive jurisdiction remains the same. [at 587-589]
It is abundantly clear that the Division of Tax Appeals had no jurisdiction to grant the relief sought in this case. Its successor, the Tax Court, likewise has no such jurisdiction.
Plaintiffs' reliance on R. 4:69-1 is also misplaced. Consistent with the mandate of Art. VI, § V, par. 4 of N.J.Constitution (1947), this rule provides:
Review, hearing and relief heretofore available by prerogative writs and not available under R. 2:2-3 [appeal to the Appellate Division] or R. 8:2 [review jurisdiction of the Tax Court] shall be afforded by a civil action in the Law Division of the Superior Court. The complaint shall bear the designation "In Lieu of Prerogative Writs."
The full text of R. 8:2, referred to in R. 4:69-1, follows:
(a) General Jurisdiction. The Tax Court shall have initial review jurisdiction of all final decisions including any act, action, proceeding, ruling, decision, order or judgment including the promulgation of any rule or regulation of a County Board of Taxation, the Director of the Division of Taxation, any other state agency or officer (including the Director of the Division of Motor Vehicles) with respect to a tax matter, or a county recording officer with respect to the realty transfer tax.
(b) Interlocutory Review. If a final decision or action of an agency or officer is reviewable by the Tax Court, an application may be made to it by an aggrieved party for leave to review an interlocutory order of such agency or officer in the manner prescribed by R. 3:24, insofar as applicable. Notice of the application shall be given by the party seeking review to all other parties in interest.
(c) Exhaustion of Remedies Before County Board of Taxation. Except as otherwise provided by N.J.S.A. 54:3-21 (direct review of certain assessments to the Tax Court) or N.J.S.A. 54:2-41 (complaint for correction of error) no action to review a local property tax assessment may be maintained unless an action has been instituted before the County Board of Taxation.
It is obvious that by referring to R. 8:2, R. 4:69-1 does nothing more than recognize the existence of the Tax Court and make clear that its statutory jurisdiction is not within the purview of the "prerogative writs" jurisdiction of the Law Division. It clearly does not enlarge the jurisdiction of the Tax Court. The limited statutory jurisdiction of that court is commented on in Pressler, Current N.J. Court Rules, Comment R. 8:2 (1981). Thus:

*605 Paragraph (a) of the rule purports to catalogue those determinations which are reviewable by the Tax Court in terms of the nature of the matter and the identity of the agency or officer rendering the initial decision. The rule does not purport to alter but only to clarify the Tax Court's statutory jurisdiction as accorded by N.J.S.A. 2A:3A-3, therein defined as "all tax appeals of such character as now are taken to, and heard and determined by, the Division of Tax Appeals in the Department of the Treasury." ...
We accordingly conclude that the Tax Court had no jurisdiction whatever to entertain plaintiffs' post-judgment motions and, accordingly, no jurisdiction to grant any of the relief which it did in this case. In light of our determination, we find no need to comment on any of the remaining contentions advanced by the Township.
The order under review is vacated. The matter is transferred to the Law Division of the Superior Court. Plaintiffs' moving papers filed in the Tax Court are to be deemed filed in the Law Division as a complaint in lieu of prerogative writs. The action is to proceed in the Law Division as if originally commenced therein. We do not retain jurisdiction.
NOTES
[1] The Local Government Cap Law, N.J.S.A. 40A:4-45.1 et seq.
[2] In the Division of Local Government Services in the State Department of Community Affairs.
[3] The provisions of Senate Bill 115 of 1978 which would have transferred to the Tax Court "jurisdiction of the Superior Court with respect to condemnation matters" was deleted from the bill prior to its enactment.
[4] L. 1978, c. 32, approved June 13, 1978 and effective July 1, 1979, transferred to the Tax Court jurisdiction over appeals in transfer inheritance and estate tax matters. N.J.S.A. 54:33-2; N.J.S.A. 54:34-13; N.J.S.A. 54:38-10.
[5] The former County Courts had no jurisdiction to entertain actions in lieu of prerogative writs. See N.J.S.A. 2A:3-3; Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 31 (1950).